May it please the Court, I'm Charles Nickel appearing for the petitioner, Mrs. Lomtyeva. This is a Ukrainian asylum and withholding of removal claim based on religious persecution. And the petitioner was found to be entirely credible, an entirely credible witness by the immigration judge and by the Board of Immigration Appeals. The major issues presented are whether a reasonable fact finder would be compelled to find that the harm suffered by the petitioner amounted to past persecution and that she has a well-founded fear of future persecution. And secondly, to what extent is her claim of past persecution and a fear of future persecution undermined by having returned to the Ukraine from the United Kingdom four times before coming to the United States in 2008 and applying for asylum? This was a problem more the definition. The administrative law judge and the board found that this wasn't persecution, it was discrimination. It shouldn't happen. They were nasty about people because of the religion they chose. But there is a difference between discrimination and persecution, and we've clearly held that. Why can we say there isn't substantial evidence to support the board in its finding that this was only discrimination and not persecution? To do that, we'd really have to conflict with precedent decisions of both this court and the board. I'd also note this was a divided opinion. The two-member majority voted for denying the appeal. The third member dissented, saying the matter should have been remanded for further hearing. Yeah, that happens in our court periodically. Yeah. This is not a case where it's just a matter of discrimination. The board noted that over a 14-year period, this person was subjected to mistreatment by ultranationalists in the Ukraine. They state that from 1994, when she joined the church until August of 2008, when she entered the United States, a respondent was pushed down, insulted, spat upon, accosted by ultranationalists. Her congregation had difficulty finding a place to worship, including an incident in one gathering where the place was set on fire. And the police did not assist the congregants, but rather blamed them for the incident. But there was over 14 years, there was 12 incidents, a little less than one a year. And they shouldn't have happened. But why is that persecution? Look, the — this Court has held in Serhita v. INS that the cumulative effect of threats and robberies or extortion, even where there's no physical contact occurs, may be sufficient to establish a persecution. The concept of persecution encompasses a variety of forms of adverse treatment. It's including non-life-threatening violence. But it has to be looked at cumulatively. And, you know, here, the board, I think, that gives the Ukrainian government quite a pass. It says that this is just discrimination and harassment from private citizens that doesn't rise to the level of persecution. However, it appears that the police directly participated in the burning of the place of worship, or at best, condoned the arson. She states in Record 175, the police came and they set the building on fire. Instead of kind of blaming and punishing the crowd, they blamed us. Well, there's two ways to interpret that. Either the police directly lit the building on fire, or the mob waited for the police to arrive and then committed arson. It's almost like waiting for guests at a bonfire because you wouldn't want them to miss it. The police also directly threatened this petitioner with death. The – after being – in another incident, after being threatened and assaulted by civilians, when she and other congregants were distributing Bibles, she decided to make a report to the police. The police – the quote, never again show up in this area. If your neighbors don't kill you, we will come and kill you. And that's at AR 185 and 86. In another incident, Ukrainian civilians attacked the petitioner while she was proselytizing, and they pushed her down, severely cutting her knee. She was losing a lot of blood. She needed medical attention. However, the medical clinic refused to provide assistance after they saw the religious literature that she was carrying. In another instance, her place of worship was pelted with stones during services. The series of abuses that she suffered during this 14-year period – being physically assaulted, pushed down, spat upon, insulted due to her religious beliefs, fired from her job, having rocks thrown through the window of her place of worship, having another place of worship burned, being denied emergency medical treatment, being accosted by an ultranationalist, and being threatened with death by the police – I would say that in the aggregate, that has to rise to the level of persecution on account of her religion and membership in a particular social group. The requisite degree of harm has been shown. And to not find that, I think you'd have to go against this Court's findings in Krotovo v. Gonzalez and the Board's finding in O.Z. and I.Z. Those are cases where – involving Jewish persons in Russia – where cumulatively, they said, from discrimination in school, from discrimination in job opportunities, from some minor physical incidents, you know, resulting in a bruised leg from being kicked and a cut lip from being slapped – that cumulatively, that can rise to the level of persecution. And I think this case parallels that very closely. You were going to comment upon the ALJs and the Board's finding that she was safe and sound in Great Britain but continued to return to the Ukraine of her own voluntariliness and that this undermines her contention that she should be persecuted. Yes. Yes. And the case they cited for that was Loho v. Mukasey. And, first of all, in that issue, they found that returning to the – that was a credibility issue, which is not the matter here. Here, the Petitioner was found to be entirely credible. Loho had problems with her testimony, and they said the fact that she went back, also, she just went back to go to work, which was inconsistent with the idea of wanting to flee her country to not, you know, to lose her job. But this case, the Court has said here, in Smolniakova, reversed the IJ's determination that an applicant would not face future persecution because she traveled back to Russia on three occasions to tend to her ill or perhaps dying mother. Also in Karouni v. Gonzalez, the Court found that two trips, returning to Lebanon for two months and one month, respectively, because parents were ill, did not constitute substantial evidence that the applicant's fear of persecution was not well founded. Well, there's – they came back to some bad stuff. But here, she was in Great Britain. She was with her relatives, her daughter, and yet she left that nest several times. How do we say that the administrative law judge was clearly erroneous in making a finding that she didn't think she was being persecuted at that time? Well, there are two things. One is that the Dorsodano-Gonzalez case says that return trips alone have never been found by the Court to negate a well-founded fear of – I mean, to negate a finding of past persecution. And it's one factor to be viewed among many in determining whether there's a well-founded fear of future persecution. And here, the Court has noticed where it's aid to a family member, both of the cases I mentioned, it was with sick parents. They found that that was a reasonable reason to make that reason credible, don't you think the daughter could have gotten a letter from her lawyer? I don't know. That was my – the client's belief. And she was found to be credible. I mean, I don't know what the actual law in England, whether, in fact, that's correct. But what matters is that's what this mother believed. And she thought that her presence was going to harm her daughter's ability to gain legal status, to have her life in Great Britain if her daughter was required to leave. Then it shows the same kind of concern that the Court saw as legitimate reasons in Smolniakova and Biorra-Sedano. And the BIA, in this case — The IJ – maybe the IJ also thought, though, as a reflection on the Petitioner's subjective status to the amount of persecution, she would be subject to if she returned, right? Well, it – In other words, I assume if it got bad enough, she wouldn't return. Well, then she then did leave. It was cumulative over many years. And finally, she left and came to the United States. She didn't believe that she would be able to stay in Great Britain. She believed that they would send her back. And that's why she feared going there. That's why she came here. Well, that's different now than, you know, she feared her daughter wouldn't get to stay in Great Britain. That's a different reason, isn't it? But this Court has found that care for a family member, concerns about their safety, their well-being, in this case parents who are unable to care for themselves, that can be a sufficient reason. And that wouldn't be a – if, you know, the Board tries to boyer Sedano, saying that, well, in that case it was a Mexican homosexual and stayed outside the country, coming to the United States several times, and that was just to – and then going back. But they said it was different there. It was like, well, that person demonstrated past persecution, and thus the burden shifted to the government. So if there's a finding of past persecution, the fact that they returned doesn't weigh in as heavily. But here, I think that the Board and the IJ were incorrect in finding that there was – I mean, it's really inconsistent with the case law here that this did not rise to the level of past persecution. Okay. Thank you, counsel. We'll give you a minute for rebuttal. Okay. Thank you. You're over your time already. Let's hear from the government. Welcome back. Good morning. May it please the Court. I'm Tracy McDonald with the U.S. Department of Justice's Office of Immigration Litigation, and I represent the Respondent, Attorney General Jefferson Sessions III. The petitioner in this case claims to have established past persecution in a well-founded fear of future persecution. However, in light of her testimony and relevant case law, the petitioner's claims are without merit. It should be noted that petitioner's claims have been heard and rejected by DHS, an immigration judge, and the Board. Well, that doesn't mean that they're right, just because they all agree that she didn't establish past persecution. I'm most interested in hearing your explanation for why this case is distinguishable from Kortova. It seems just dead on the money in terms of the level of harm that the petitioner was subjected to. So if you have something to say about why that case is distinguishable, I'd love to hear it. Well, the government would argue that the petitioner testified to random incidents of which the facts found do not amount to persecution. What I guess I'm saying is that you're familiar with the facts in Kortova, I assume, right? Yes. I look at each of the incidents that happened to that petitioner, right, in terms of the level of severity, the frequency, whatnot, and then I compare them to the incidents that this petitioner endured, and I don't see any material difference. It's not as though in Kortova there was a more serious incident of harm than we have here, is there? That's what I guess, what's different about the facts in that case? Well, the government would argue that the incidents in Kortova were more... Give me one that was more serious in that case than we have here. The petitioner in this case was never physically harmed. She was in a house... Let me tell you the two most serious, it seems to me. She was in a house, a church at someone's house, a mob surrounded the church. They started throwing stones, right? I don't even know if I'm confusing more than one incident. The police come, and they say, protect us, and instead the police watch as the mob burns down the house. That seems like a pretty serious incident. Somebody could have been killed, presumably, in that. I'm sure you would have been, I would have been very frightened if we had been standing there. And then when she's subjected to violence by her neighbors or other private citizens, she goes to the police and says, protect us, these people have harmed me, and the police said, don't come back here. If they don't kill you, we will. Again, those seem... I don't know. I mean, yeah, the police didn't physically assault her, but short of that, I think we've got everything that occurred in Kortova. So what am I missing on that? I would argue that the police's threat in that incident was merely a hollow threat, and it didn't amount to any significant actual suffering or harm. And the petitioner also testified after testifying about that threat from the police. She stated that that was how the police spoke to them. So it was as though she didn't testify to taking any real fear from the threat, that it was just a hollow threat. I believe that's what her testimony indicates. Well, I think that your opposition has focused upon the issue that I'm sure bothers all of us. Religious intolerance is worldwide. It happens all over, all the time. And it's something that we, all of us, I'm sure, oppose. But unless the government does it, it's not persecution. In other words, we have a lot of people to discriminate. But the government has to do it in order to give her rights here. But here you do have the government doing some action. That's the action of the police. And the bothersome part about this case is whether on several occasions where the police have acted, they've acted in a way that is less than helpful to the situation generally. That is, when the police begin discriminating, then it looks more like the government is involved in the process. Now, that's a good argument. What's your response? Well, the incident with the church being set on fire, the police did not set the fire. It was the mob surrounding the church. And in Iraq... Well, suppose they come and they're just going to start the fire and the police are over-applauding. I don't think you have to have the police actually lighting the match, do you? Well, this court has found that police ineffectiveness is not enough to establish an entitlement to relief. Yeah, it is. If the government is unwilling or unable to control private citizens who are inflicting what would otherwise be persecution, that definitely satisfies the standard. And that seems to me what happened here. I agree with you. The best reading of the testimony is that the police weren't the ones who lit the church on fire, but they were standing there. And the people were pleading with them to help and protect us, and instead the police just watched as the mob burned the church down, right in front of them. Again, the argument... The government would argue that that's not the police engaging in persecution against the petitioner. They were ineffective when they came to, or when they responded to the petitioner's call. They were unwilling to control a mob of private citizens who were terrorizing these churchgoers. I don't know what else, how else to describe that. I mean, it is what it is, right? I suspect that your best case is Persaud, where this court held that when the person was brought into jail and was treated inappropriately, that we held that was insufficient to show a connection. There's a fine line someplace, and what is your strongest case? Is Persaud the best case for you, or do you have a stronger case for the side of the government that this does not amount to persecution? Naravani v. Gonzalez. This court held that most threats do not rise to the level of persecution. In Hoxha, we had threats of harassment, or that threats are harassment versus persecution. In Helene v. Holder, the petitioner was stripped naked by students. He was spat upon, threatened. His mother was taken to a government clinic for severe injuries, and they wouldn't treat her. He was detained, arrested. He was beaten by a mob of rioters, and the court held that that did not constitute past persecution. So the government would argue that this case, in line with Helene, that this court has held that more egregious acts than were experienced by the petitioner in this case did not constitute past persecution. Okay. Anything else? Just in summation, basically substantial evidence does exist to support the agency's determination that petitioner failed to establish past persecution and a well-founded fear of future persecution. The petitioner fails to satisfy her burden of proof for asylum. She also failed to demonstrate that the record evidence compels the conclusion that she would more likely than not be persecuted or tortured in Ukraine. Accordingly, the court should deny the petition for review. Okay. Thank you, counsel. Let's give counsel for the petitioner a minute for rebuttal. Just very briefly, I believe this case is quite distinguishable from Helene v. Holder. That's an Indonesian case where this young man was discriminated against in school growing up and treated very badly. During one period of civil unrest, a mob assaulted him while he was on his motorcycle, took his helmet off, and they saw that he was an ethnic Chinese, and the mob attacked him. The police rescued him in that incident. That's quite a different scenario than the way the police in the Ukraine responded, say, to the threat against the church. How do you distinguish Prasad? Well, he was taken into jail one time and beaten and mistreated. By the police? By the police. But even, you know, it was a one-time beating and a detention, and the court determined that discrimination and incidents of mistreatment and a one-time arrest and beating might not be enough to make it. But I think that... It was not. It was not enough. It was not. Yeah. But this is distinguishable in that this was persecution going over a very long time and where the police actually threatened a person with death. There's a pattern in practice here. You know, we also address the issue of a particularly disfavored group. The harm inflicted on this petitioner went well above, you know, all three cases that were cited. Above the beating that the person took in Prasad? Yeah, I think in the total. This wasn't verbal threats. That wasn't telling people. This was a situation where one person was singled out and was actually beaten in jail, but under the process, we sustained the board. Yes. But here, that was, you know, an incident of police abuse, but it wasn't an ongoing thing for this individual. He was subsequently released, and here we have the police basically saying to this person, don't come around here or we'll kill you. And then when they go to the church, the mob actually waited for the police to arrive before they commit the arson because it was known that the police would actually be in favor of that crime. I think it's a higher level. And I think it's also very consistent with the other case law that they had mentioned, especially Crotovo v. Gonzalez. I don't think it's distinguishable from that case. Okay. Thank you, counsel. Thank you. We appreciate the arguments. The case just argued will be submitted.
judges: Wallace, Tashima, Watford